IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-375-GCM-DCK

| UFG HOLDINGS, LLC, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | MEMORANDUM AND RECOMMENDATION |
| DEMAYO LAW OFFICES, LLP, | ) |  |
| Defendant. | ) |  |

**THIS MATTER IS BEFORE THE COURT** on "DeMayo Law Offices, LLP's Motion To Dismiss" (Document No. 14). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be denied.

## I. BACKGROUND

Plaintiff initiated this action with the filing of its "Complaint" (Document No. 1) on July 27, 2021. Plaintiff initially filed suit against both John R. Hunter and DeMayo Law Offices, LLP. See (Document No. 1). However, John R. Hunter is no longer a Defendant in this action on account of the Court's July 11, 2022 Order (Document No. 23) granting the "Joint Motion To Dismiss John R. Hunter Without Prejudice" (Document No. 22). Defendant DeMayo Law Offices, LLP ("DeMayo") is therefore the sole remaining Defendant.

Plaintiff is the fiduciary and Plan Administrator for the UFG Holdings Health and Welfare Plan ("the Plan"). (Document No. 1, p. 1); (Document No. 18, p. 2). Defendant DeMayo is the law firm that represents Plaintiff's beneficiary and Plan participant, former Defendant John R.

Hunter, in relevant tort proceedings with third parties. (Document No. 1, p. 2). "The Plan provides welfare benefits to eligible employees of UFG and its subsidiary companies that participate in the Plan, including but not limited to Finance of America Holdings, LLC, and their dependents, including medical benefits." Id.

This dispute arises out of an automobile accident in which Mr. Hunter, a Plan participant, was involved on September 29, 2018. Id. Plaintiff paid $685,716.27 in medical expenses on behalf of Hunter related to "treatment of the injuries he sustained as a result of the Accident." Id. at p. 7. Following the accident, Hunter retained DeMayo to represent him in tort litigation related to the accident. Id. Hunter allegedly settled the tort litigation in October 2020, following which Plaintiff filed the instant lawsuit in July 2021. Id. at p. 9. Plaintiff claims that it had subrogation and reimbursement rights pursuant to the terms of the Plan, and through this lawsuit, it seeks reimbursement of the medical expenses it paid on Hunter's behalf. Id. at p. 3. By participating in the Plan, Plaintiff alleges Hunter agreed that he "would reimburse the Plan for any benefits paid or disbursed by the Plan if he received a recovery from any third party." Id. at p. 7.

Despite the terms of the Plan, and despite what Plaintiff alleges to be Defendant DeMayo's clear knowledge of Plaintiff's subrogation and reimbursement rights, Defendant DeMayo did not turn over the full value of the settlement funds from Plaintiff's related tort litigation. Id. at p. 9. Plaintiff contends that it simply "received a check from DeMayo in the amount of $27,222.43," which "was $658,493.84 less than the Plan's lien amount against the settlement recovery." Id. Moreover, after Plaintiff apparently advised DeMayo of the large gap in terms of the amount for which it should have been reimbursed and the partial reimbursement amount, "DeMayo sent the Plan a letter in the mail…advising that 'Our firm has forwarded a copy of the letter along with the check to our client to handle. You will need to contact the client regarding this matter. Thank

you.'" Id. at p. 10. Plaintiff has not been successful in obtaining any further reimbursement from DeMayo or Hunter for the remaining medical expenses. Id. The Complaint states that DeMayo is "in possession of the Settlement Funds from which reimbursement is sought." Id.

Plaintiff brings one claim against Defendant for violation of section 503 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Id. at p. 11. Plaintiff seeks the following relief: (1) "[t]he imposition of a constructive trust and/or equitable lien by agreement in favor of the Plan upon Settlement Funds in possession of Defendants which are subject to the Plan's subrogation/reimbursement rights;" (2) "[a] declaration of the Plan's ownership of the above-referenced Settlement Funds;" (3) "[a]n order directing DeMayo and Hunter, respectively, to pay or turn over such Settlement Funds, plus accumulated interest, to the Plan;" and (4) attorneys' fees and costs pursuant to ERISA section 502(g). Id. at pp. 12-13.

Defendant "DeMayo Law Offices, LLP's Motion To Dismiss" (Document No. 14) and the accompanying "Memorandum Of Law In Support Of DeMayo Law Offices, LLP's Motion To Dismiss" (Document No. 14-1) were filed September 14, 2021. Plaintiff's "Memorandum In Opposition To Defendant's Motion To Dismiss" (Document No. 18) was filed October 12, 2021. Defendant's "Reply Brief Opposing Plaintiff's Opposition To DeMayo Law Offices, LLP's Motion To Dismiss" (Document No. 21) was filed October 26, 2021.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Graham Mullen.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992);

3

Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

The central issue presented by Defendant's motion to dismiss is whether the Plan can sue its participant and beneficiary's attorney for reimbursement of settlement funds obtained from tort

4

litigation related to an accident in which the Plan participant was involved and for which the Plan paid the participant's medical expenses. Defendant, of course, argues that it is not liable, pointing to various district court cases – notably, none of which is from this district – while Plaintiff argues that Defendant is subject to liability under ERISA section 503, highlighting Supreme Court case law that it contends answers the question in its favor. The undersigned will analyze the parties' respective arguments below.

1. **Additional Factual Background**

The undersigned will first set forth some additional factual context that is necessary for an analysis of this matter. The terms constituting the relevant plan language are contained in the Summary Plan Description, "expressly incorporated into the Plan by reference." (Document No. 1, p. 3). In that document, Plaintiff alleges, there is a "Subrogation and Reimbursement" section, under which the Plan has a right to be reimbursed where "a third party causes or is alleged to have caused a Sickness or Injury for which [the plan participant] receive[s] a settlement…from [the] third party." Id. The Plan participant is then obligated to "use those [settlement] proceeds to fully return to the Plan 100% of any Benefits [the participant] received for that Sickness or Injury." Id. Furthermore, the Plan "has a first priority right to receive payment on any claim against any third party before you receive payment from that third party." Id. at p. 4. Finally, the Plan must give "written approval" before a participant "accept[s] any settlement that does not fully reimburse the Plan." Id. at p. 5.

On March 18, 2019, Plaintiff states that "DeMayo sent an e-mail communication to Optum, the Health Program's reimbursement and recovery agent, acknowledging the Plan's lien and claim for reimbursement from any recovery Hunter received from any third party and stating that they had 'attached it in our file.'" Id. at p. 7. Throughout the following months – indeed, through at

5

least September 2020 – both the Plan and DeMayo were in frequent email communication, with the Plan asking for updates as to the status of the settlement negotiations and DeMayo requesting updated accountings of the Plan's lien. Id. at pp. 7-9. On October 27, 2020, DeMayo responded to the Plan to advise that the tort case had settled. Id. at p. 9. About two weeks later on November 10, 2020, the Plan "received a check from DeMayo in the amount of $27,222.43," which Plaintiff notes is "658,493.84 less than the Plan's lien amount against the settlement recovery." Id. The Plan then "returned this amount to DeMayo, noting that it was well below" the outstanding amount it was owed. Id.

Months later, in February 2021, DeMayo allegedly sent a letter to the Plan which said that "Our firm has forwarded a copy of the letter along with the check to our client to handle. You will need to contact the client regarding this matter. Thank you." Id. at p. 10.

### 2. Analysis

Defendant contends in its motion to dismiss that "North Carolina federal courts have made clear that DeMayo's distribution of settlement funds to [] Hunter, even if they were on notice of the Plan's lien, does not subject them to liability under ERISA." (Document No. 14-1, p. 5) (citing T.A. Loving Co. v. Denton, 723 F. Supp. 2d 837 (E.D.N.C. 2010); Great-West Life & Annuity Ins. Co. v. Bullock, 202 F. Supp. 2d 461 (E.D.N.C. 2002) (concluding that an attorney could be liable under ERISA section 502(a)(3) *only* where one of three conditions is satisfied: "where the attorney is a party or signatory to a plan/contract, he otherwise agrees to disburse funds in accordance with the plan, or his refusal to distribute proceeds to the Plan was the result of negligence or was coupled with bad faith")). Plaintiff, on the other hand, disagrees – citing to Supreme Court precedent which suggests that ERISA's section 502(a)(3) "admits of no limit…on the universe of possible defendants [so long as what a plaintiff seeks is 'appropriate equitable

relief'].'" (Document No. 18, p. 10) (citing Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 246 (2000)). Furthermore, Plaintiff contends that the Supreme Court has answered the question of what appropriate equitable relief can include, citing to Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 362-63 (2006). (Document No. 18, p. 10). Plaintiff also cites to Barnhill Contracting Co. v. Oxendine, which departed from Bullock and Denton (upon which Defendant relies), to support its position that "Supreme Court and circuit court authority discussed [in Barnhill] support[] the conclusion that ERISA allows a claim for equitable relief against an attorney holding settlement funds subject to the equitable lien of an ERISA plan." Id. (citing Barnhill, 105 F. Supp. 3d 542, 549 (E.D.N.C. 2015)). The undersigned will analyze these arguments below.

Respectfully, the undersigned notes that the legal landscape on this issue in the Western District of North Carolina has changed since the parties submitted their briefing. Indeed, three cases in this district have been decided that have been resolved in favor of Plaintiff's position. See Synchrony Fin. Welfare Ben. Comm. v. DeMayo Law Offices, LLP, 3:21-CV-376-RJC-DSC, 2022 WL 2600165 (W.D.N.C. July 8, 2022); Duke Energy Ben. Comm. v. Heafner, 3:21-CV-355-GCM-DSC, 2022 WL 1056420 (W.D.N.C. Apr. 8, 2022); and Mann+Hummel Filtration Tech. US LLC v. DeMayo Law Offices, LLP, 3:21-CV-374-GCM-DSC, 2022 WL 878883 (W.D.N.C. Mar. 24, 2022).

In Heafner, the facts were very similar to the present case – the participant was involved in a car accident, sustaining injuries requiring medical care for which the Plan paid. 2022 WL 878883, at *1. The Plan "reminded [both participant and] DeMayo of [participant's] contractual obligations under the Plan," which included "fully reimburs[ing] any benefits received from third parties, including proceeds" from settlements." Id. "DeMayo remitted a check to the Plan in [an]

amount…less than what the Plan had paid in medical expenses." Id. The Court found, distinguishing Bullock (cited by Defendant in this case), that "ERISA is not silent about whether attorneys can be sued," for "Section 502(a)(3) permits *anyone*—including a lawyer or a law firm—to be sued for reimbursement, so long as equitable relief is otherwise appropriate." Id. at *3-*4. Bullock, the court suggested in Heafner, approached the issue from the wrong perspective. Id. at *3 (citing Bullock, 202 F. Supp. 2d 461). While the Bullock court's analysis "hinged on a consideration of state law," the Heafner court suggested that it should not have even turned to state law because ERISA is not silent about who can be held liable for violation of its provisions. Id. (citing Harris, 530 U.S. at 246). If ERISA is *not* silent on a particular issue, the ERISA statute itself, as federal law, should of course be followed. See Synchrony Fin. Welfare Ben. Comm., 2-2022 WL 2600165, at *3 (holding that Bullock was "not persuasive" because it should not have turned to state contract law where section 502(a)(3) is "simply [] not silent on whether DeMayo may be a defendant"). The court in Heafner lamented that "*Bullock* does not even cite *Harris Trust* [a Supreme Court decision], suggesting that the court may have overlooked controlling authority." Id. Indeed, the undersigned notes that the Supreme Court quite clearly stated in Harris that section "502(a)(3) admits of no limit []aside from the 'appropriate equitable relief' caveat…on the universe of possible defendants." 530 U.S. at 246.

Unlike in Bullock, the Eastern District of North Carolina in Barnhill found that the defendant law firm's "suggestion that [it] deserve[d] special treatment under ERISA because [it was composed of] attorneys is misplaced." 105 F. Supp. 3d at 547. Barnhill was cited favorably by the three district court cases in the Western District of North Carolina to have considered the issue. See Synchrony, 2022 WL 2600165, at *3; Heafner, 2022 WL 1056420, at *4; and Mann, 2022 WL , at *4. The Barnhill court considered facts similar to the present case, in which

Defendant was repeatedly advised via email of the Plan's lien. (Document No. 1, pp. 7-9). In that case, the Plan "provided actual and/or constructive notice to the Bain defendants that it had claims for reimbursement and/or subrogation arising from the payment of medical benefits." Barnhill, 105 F. Supp. 3d at 545-46. Thereafter, the defendant law firm assisted the plan participant who had been injured in a car accident to settle claims against third parties. Id. The law firm then "refused" to turn over such funds to the Plan. Id. The Court found that ERISA provided for relief against the law firm, particularly since the plaintiff there alleged that the settlement funds were "specifically identifiable" and "in the possession/and or control" of the law firm." Id. at 546-47. The court there cited the Supreme Court's decision in Sereboff. Id. at 547 (citing 547 U.S. at 362-63).

The undersigned therefore declines to depart from precedent set in this district that concludes that attorneys *can* be liable under ERISA section 503(a) for disbursing settlement funds to the participant despite knowledge of the Plan's lien. Indeed, as the court states in Synchrony, "the overwhelming weight of Supreme Court and other circuit court authority supports the availability of a claim for equitable relief against [the attorney and law firm defendants]." 2022 WL 2600165, at *3 (collecting cases) (quoting Barnhill, 105 F. Supp. 3d at 549). Here, what the Plan seeks is the imposition of a constructive trust or an equitable lien upon the settlement proceeds plus interest, declaratory relief, and attorneys' fees and costs.[1] See (Document No. 1, p. 13). Further, Plaintiff has specifically alleged that the settlement funds are "in possession" of DeMayo. Id. at p. 10. Sereboff clearly held that such relief is equitable and appropriately sought pursuant to section 502(a)(3) of ERISA – imposition of "a constructive trust or equitable lien on a

---

[1] Plaintiff also seeks an order "[d]irecting Defendant[] to pay or turn over such settlement proceeds, plus accumulated interest, to the Plan to the extent of its interest therein." (Document No. 1, p. 13). The undersigned takes no position regarding whether this is legal or equitable relief, and, as the court did in Mann, declines to "address it further" since "DeMayo does not raise the issue." 2022 WL 878883, at *5, n.8.

9

specifically identified fund [rather than] from the [defendant's] assets generally" is "appropriate equitable relief." 547 U.S. at 363.

Defendant also cites some out-of-circuit caselaw, which the undersigned does not find persuasive in light of three cases having been decided in this district which conclude that Plaintiff's position is more persuasive. See (Document No. 14, pp. 7-9). The undersigned will therefore not address the out-of-circuit cases that Defendant cites, as the reasoning provided above is sufficient to warrant the conclusion that Defendant certainly *can* be held liable under section 503 of ERISA for disbursing settlement proceeds to Hunter rather than to the Plan itself.[2] The undersigned therefore respectfully recommends that Defendant's motion be denied.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "DeMayo Law Offices, LLP's Motion To Dismiss" (Document No. 14) be **DENIED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude

---

[2] The undersigned further declines to address Defendant's ethical and policy considerations argument. See (Document No. 14-1, pp. 10-11). The analysis in this Memorandum and Recommendation provides clear indication that a law firm can be held liable under ERISA section 502(a)(3) and any state law to the contrary would conflict with the statute.

the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: September 19, 2022

David C. Keesler
United States Magistrate Judge